[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10592
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00022-HLM

BRANDON COFFMAN,

                                                                                   Plaintiff-Appellee,

versus

HARRY DALLAS BATTLE,
in his individual capacity,

                                                                                   Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 11, 2019)

Before WILSON, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

This is a § 1983 excessive force case involving a corrections officer's use of a taser on a previously unruly but restrained pretrial detainee. The district court determined that Defendant-Appellant Harry Dallas Battle ("Battle") was not entitled to qualified immunity and granted Plaintiff-Appellee Brandon Coffman's ("Coffman") motion for summary judgment as to Coffman's claims that (1) Battle violated Coffman's Fourteenth Amendment right to be free from the use of excessive force, and (2) Battle committed battery under Georgia state law. Even though the district court concluded that Battle committed battery as a matter of law, the district court decided that genuine issues of material fact existed as to whether Battle was entitled to official immunity under Georgia state law. As a result, it denied Coffman's motion for summary judgment on the issue of state law official immunity and indicated that the case would proceed to trial only to resolve that issue and the issue of damages.[1]

We have reviewed the parties' briefs, applicable law, and relevant portions of the record—including unchallenged video evidence of Battle using his taser on Coffman after tightening the left wrist strap on Coffman's restraint chair. We find no reversible error in the district court's disposition of Coffman's motion for summary judgment as to the federal § 1983 claim. Nor do we find any reversible

---

[1] The district court did grant Battle's motion for summary judgment as to Coffman's emotional distress claim under Georgia law. That decision is not challenged on appeal, and we therefore do not address it in this opinion.

2

error in the district court's denial of Battle's cross motion for summary judgment on the issue of official immunity under Georgia law. The district court did not err in considering hearsay evidence of statements Battle made to Coffman after the tasing incident, and even assuming <u>arguendo</u> the district court did err in considering those statements, the error was harmless.[2] Consequently, we affirm the judgment of the district court in all respects.

I.

We assume the parties are familiar with the facts and procedural history of this case and therefore omit any detailed discussion of those issues here. We proceed directly to a discussion of the relevant legal issues as applied to the facts of this case, including whether the district court erred when it determined that Battle violated Coffman's Fourteenth Amendment rights as a matter of law; that Battle was not entitled to qualified immunity because it is clearly established that the use of force on a subdued detainee is excessive; and that genuine issues of

---

[2] Battle does not directly challenge the district court's conclusion that Coffman was entitled to summary judgment on his state law battery claim, and we therefore also decline to address the issue in this opinion. That said, Battle does argue generally that the district court failed to properly apply the relevant summary judgment standards, including construing the record in his favor and giving him the benefit of justifiable inferences, in granting Coffman's motion for summary judgment. Given the strength of the video evidence of the tasing incident in this case, which Battle does not argue has been doctored or shows something different than what actually happened, we reject Battle's argument that the district court erred in applying the relevant summary judgment standards. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 378, 127 S. Ct. 1769, 1775 (2007) (indicating that, on review of summary judgment involving unchallenged video evidence, we should "view[] the facts in the light depicted by the videotape").

material fact remained as to whether Battle was entitled to state law official immunity.

## II.

We review <u>de novo</u> a district court's decision to grant a motion for summary judgment, construing the facts in the light most favorable to the non-moving party. <u>Jacoby v. Baldwin Cnty.</u>, 835 F.3d 1338, 1342 (11th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the non-moving party is generally entitled to benefit from all justifiable inferences at the summary judgment stage, in cases involving undisputed video evidence a different rule applies. When there are no allegations that the video evidence has been doctored, or that the video shows something different from what actually happened, the Supreme Court has stated that we should "view[] the facts in the light depicted by the videotape." <u>Scott v. Harris</u>, 550 U.S. 372, 378, 127 S. Ct. 1769, 1775 (2007).

## III.

### A.

The district court did not err when it determined that Battle violated Coffman's Fourteenth Amendment rights as a matter of law. To begin, there is no dispute that Coffman was a pretrial detainee at the time of the incident and that his

excessive force claim is governed by the Fourteenth Amendment, which "guards against the use of excessive force against arrestees and pretrial detainees." J W ex rel. Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1259 (11th Cir. 2018). Although we were previously tasked with determining whether an officer employed force "maliciously or sadistically for the very purpose of causing harm" when considering a Fourteenth Amendment excessive force claim, see Piazza v. Jefferson Cnty., Ala., 923 F.3d 947, 952 (11th Cir. 2019) (citation omitted), the Supreme Court recently clarified that "a pretrial detainee raising a Fourteenth Amendment claim needn't prove an officer's subjective intent to harm but instead need show only that 'the force purposely or knowingly used against him was objectively unreasonable.'" Id. (citing Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015)). In turn, one way of establishing that a use of force is objectively unreasonable—and thus excessive and unconstitutional—is to show that the officer "continue[d] to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated." Id. at 953 (quoting Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008)).

Construed in Battle's favor, the record does indicate that Coffman had caused significant trouble for Battle and his fellow officers on the night at issue in this appeal. Battle says Coffman threatened "to beat [Battle's] ass," and Coffman

5

also violently kicked his cell door for several minutes. He even flooded two different holding cells by placing a rag in the toilet and continuously flushing the toilet until it overflowed. Having had enough, officers eventually placed Coffman in a restraint chair inside the suicide cell. The suicide cell did not have any toilets, but it was equipped with a video camera.

The clear video evidence taken from that camera, which Battle does not argue has been doctored or shows something other than what actually happened, shows Coffman sitting in a restraint chair next to another inmate in a similar restraint chair. Coffman's torso is bound to the chair at the waistline by a seatbelt-like strap, as are both of his shoulders. Similarly, both of Coffman's arms are bound to the armrests of the restraint chair at the wrists. As the video progresses, Coffman is shown freeing his left arm and left shoulder from the restraints. His torso, right shoulder, and right arm remain securely bound to the restraint chair. He then uses his left arm to loosen (or attempt to loosen) his fellow inmate's restraints. About this time, Battle (the officer) received word from a fellow officer that Coffman was "out of his chair." The fellow officer did not provide Battle with any further detail, and there is no indication that Battle saw the video of Coffman removing his left arm and shoulder from the restraint chair before he returned to

the suicide cell. By the time Battle entered the suicide cell,[3] Coffman had returned his left arm to the wrist restraint on the armrest of the restraint chair. The left wrist restraint is visibly loose. Battle walks over next to Coffman, and less than ten seconds after entering the room Battle tightens the strap securing Coffman's left wrist to the armrest of the restraint chair. About six seconds later, while Coffman's left wrist is inside the wrist restraint, Battle deploys his taser into Coffman's abdomen in drive stun[4] mode. A few more seconds pass, and Battle deploys his taser in a similar manner a second time. Near the end of the second taser use, Coffman frees his left arm from the wrist restraint and uses it to cover his abdomen in a protective manner. He quickly returns his left arm to the armrest when Battle's fellow officer raises what appears to be a taser of his own. Battle's taser caused four burns marks, which turned to scars, across Coffman's abdomen.

Given the clear video evidence, we conclude that Battle's use of the taser on the subdued Coffman was objectively unreasonable. Of course, we are mindful that officers have "legitimate interests" in "preserv[ing] internal order and discipline" and "maintain[ing] institutional security," and that officers also are

---

[3] We note that the camera responsible for capturing the video of the incident was mounted just above the door Battle used to enter the suicide cell. The view from the camera is unobstructed and persons entering the suicide cell before the tasing had a clear view of the frontside of Coffman and his fellow inmate as they sat next to each other in their restraint chairs.

[4] This means that the taser did not override Coffman's central nervous system or disrupt his muscle control, but it did cause a painful burning sensation. Hoyt v. Cooks, 672 F.3d 972, 975 n.4 (11th Cir. 2012). Typically, tasers are used in drive-stun mode "as a pain compliance weapon" to convince a person to cooperate. Id.

7

frequently called upon to make "split-second judgments" in situations "that are tense, uncertain, and rapidly evolving." Piazza, 923 F.3d at 953 (quoting Kingsley, ___ U.S. at ___, 135 S. Ct. at 2473). We also recognize that Coffman's misbehavior had disrupted operations at the Floyd County Jail. At the same time, however, the law is clear that a use of force against a pretrial detainee "may be defensive or preventative—but never punitive—[and] the continuing use of force is impermissible when a detainee is complying, has been forced to comply, or is clearly unable to comply." Id. Battle's conduct crossed the line of constitutionality because Coffman had, despite his disruptive behavior, already "been forced to comply" and was otherwise sufficiently "subdued" that the use of a taser was clearly disproportionate to the need for that type of force.

Although Battle argues on appeal that Coffman was not securely restrained because he was able to remove his left arm from the restraint chair, Battle tightened the strap holding Coffman's left arm to the restraint chair only seconds before twice deploying his taser into Coffman's abdomen, and it is clear from the video that, at the time of both the first and second applications of Battle's taser, Coffman was offering no resistance. Moreover, Coffman's entire body was securely fastened to his restraint chair, as was his right shoulder and right arm. Under such circumstances, which we conclude would have appeared to any reasonable officer to involve a subdued detainee who had been sufficiently forced

8

to comply, the need for the use of force was extraordinarily low. Given this, the use of a taser—not once but twice in quick succession—crossed the line from a constitutionally permissible "defensive or preventative" use of force to a constitutionally impermissible "punitive" use of force against a pretrial detainee that was "excessive in relation to [its] purpose." Id. at 954–55 (citations omitted).

This conclusion is buttressed by other considerations identified by the Supreme Court in Kingsley that "may bear on the reasonableness or unreasonableness of the force used." Kinsley, ___ U.S. at ___, 135 S. Ct. at 2473. We note that the Kingsley considerations are neither mandatory nor exclusive, but instead are "potentially relevant to a determination of excessive force." Id. Thus, in addition to the fact that the need for force was extraordinarily low because Coffman's body was clearly secured to a restraint chair when Battle tased him, we also reject Battle's argument that the extent of Coffman's injuries weighs in Battle's favor. In addition to four burn marks (that turned into scars) on his abdomen, Coffman endured two painful and seconds-long electrical shocks while sitting in his restraint chair. Although we are aware that a single use of a taser has been held to be a reasonable and thus not excessive use of force, see Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (observing that "being struck with a taser gun is an unpleasant experience" but concluding that "a single use of the taser gun causing a one-time shocking . . . was reasonably proportionate to the

9

need for force and did not inflict any serious injury" in a case involving an unrestrained, uncooperative, and belligerent tractor trailer driver involved in a traffic stop), we easily conclude that under the totality of the circumstances of this case the pain and injuries Coffman endured were not de minimis in nature. As a result, those injuries weigh in favor of affirming the district court's decision.

    Battle also argues that the security problem and threat posed by Coffman were substantial. We disagree. As noted above, Coffman clearly caused problems for the officers before he was placed in a restraint chair inside the suicide cell. But, at the time Battle entered the suicide cell, those problems were substantially under control. We know from viewing the video evidence that Coffman removed his left arm and shoulder from the restraints, but there is no indication that Battle knew anything more than that Coffman was "out of his chair" before he entered the cell. In any event, upon entering the suicide cell Battle determined that Coffman's left wrist restraint needed to be secured and quickly did so. Nor is there any indication that Coffman was armed, or that he had actually used force against Battle at any time prior to the tasing incident. And although he had previously flooded two cells, the suicide cell did not have any toilets. Thus, when compared to other cases where the threat factor has weighed in favor of the officer, any remaining security problem and threat posed by Coffman was "exceedingly minimal." See Piazza, 923 F.3d at 955 (comparing situation involving man

carrying a shower curtain and running away from officers to three Eleventh Circuit cases in which the officer was held to have reasonably perceived a threat, including one involving a hatchet-wielding suspect, one involving a knife-wielding suspect, and another involving a car rolling toward the officer). In light of the fact that Coffman posed an exceedingly minimal ongoing threat or security risk at the time of the tasing, Battle acted unreasonably in tasing Coffman twice within seconds after tightening his left wrist restraint. At that moment in time, no reasonable officer could have concluded that a significant security problem or threat remained because Coffman was secured to his restraint chair.

In sum, we hold that the district court did not err in concluding, as a matter of law, that Battle violated Coffman's Fourteenth Amendment right to be free from the use of excessive force when he twice tased Coffman, who was secured to a restraint chair, only seconds after tightening Coffman's loose left wrist restraint.

B.

Of course, even though the district court did not err in determining that Battle violated Coffman's Fourteenth Amendment right to be free from excessive force, Battle may still be able to avoid liability unless Coffman can establish that Battle is not entitled to qualified immunity. We also agree with the district court that Battle is not entitled to qualified immunity in this case.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5] Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). To qualify as clearly established law, "a legal principle must have a sufficiently clear foundation in then-existing precedent." District of Columbia v. Wesby, ___ U.S. ___, ___, 138 S. Ct. 577, 589 (2018). This means that the principle is "settled law" and also is one that "every reasonable official would know." Id. at ___, 138 S. Ct. at 589–90 (citations and internal quotation marks omitted). In the context of excessive force cases like this one, it is important to define the right at issue with specificity. See City of Escondido v. Emmons, ___ U.S. ___, ___, 139 S. Ct. 500, 2019 WL 113027, at *2–3 (2019) (per curiam) (citation omitted). Even so, a plaintiff may still overcome the qualified immunity defense without a factually similar case finding particular conduct unconstitutional if existing precedent places the unlawfulness of the conduct "beyond debate." Wesby, ___ U.S. at ___, 138 S. Ct. at 590. At the end of the day, "the critical question is whether the law gave the officer 'fair warning' that his conduct was unconstitutional." Piazza, 923 F.3d at 955.

---

[5] The parties do not dispute that Battle was acting in his discretionary capacity as a corrections officer when the challenged tasing occurred.

The law of this Circuit gave Battle fair warning that his conduct was unconstitutional. As a panel of this Court observed in May 2019, "[i]t was more than ten years ago now that this Court held, in no uncertain terms, that '[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive.'" Id. (quoting Danley, 540 F.3d at 1309) (second alteration in original); see also id. at 955–56 & n.9 (collecting cases in support of the basic legal principle that officers may not use gratuitous force against prisoners or detainees who are already subdued and force used after the need for that force ceases is excessive).

Given the vintage of this settled legal principle, which dates to well before July 2016 when the events at issue in this case occurred, we easily conclude that Battle violated clearly established law by tightening Coffman's left wrist restraint and then tasing Coffman twice in quick succession while he was secured to a restraint chair in a suicide cell. Because every reasonable official would know that the use of such substantial force on a restrained detainee violated the Fourteenth Amendment, we hold that the district court did not err in rejecting Battle's qualified immunity defense.

C.

Finally, Battle argues that the district court erred by denying Battle official immunity as to Coffman's state law battery claim. Because there is no dispute he was acting in his discretionary capacity when he tased Coffman, Battle is entitled to official immunity under Georgia law unless Coffman can show that Battle's acts were performed with actual malice or intent to cause injury. "Actual malice is a demanding standard; it requires an officer to act with 'a deliberate intention to do a wrongful act.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999)). Indeed, a showing of actual malice or intent to injure requires more than "poor judgment, rude behavior, and reckless disregard for the rights and safety of others." Selvy v. Morrison, 665 S.E.2d 401, 405 (Ga. Ct. App. 2008).

Although it is generally true that the Georgia "state courts must consider the issue of a government employee's qualified immunity from liability as the threshold issue in a suit against the officer in his personal capacity," Cameron v. Lang, 549 S.E.2d 341, 345 (Ga. 2001), it is also true that where genuine issues of fact as to an officer's mental state remain unresolved on a motion for summary judgment, Georgia courts have held that "[a] factfinder may infer from evidence that a defendant acted with actual malice," see Lagroon v. Lawson, 759 S.E.2d 878, 883 (Ga. Ct. App. 2014). We have also recognized that "a jury can infer

actual malice based on an officer's conduct." Black, 811 F.3d at 1266. Even so, conduct that is unreasonable or recklessly illegal will not support an inference of actual malice. Id.

We agree with the district court that, under the circumstances of this case (which include clear video of evidence of the challenged use of force), a jury could infer from Battle's conduct that he acted with actual malice when he twice tased Coffman while he was secured to a restraint chair.[6] In reaching this conclusion, we note that a jury would not be required to so decide; the fact that we have determined that Battle violated Coffman's Fourteenth Amendment rights by subjecting him to an objectively unreasonable and excessive use of force does not necessarily mean that Battle acted with actual malice or an intent to injure. We

---

[6] Nor are we convinced that the district court necessarily erred by also deciding the state law battery claim. To the extent that the Georgia courts have a stated preference for "considering" or "evaluating" the state law official immunity issue before deciding the underlying claim, see Cameron, 549 S.E.2d at 345, the district court did just that and ultimately determined that factual issues remained as to Battle's state of mind. Moreover, given that the rule stated in Cameron is predicated on creating a "logical, efficient, [and] fair" procedure, we see little logic or efficiency in remanding the battery issue for consideration by a jury in this case. This is because we have already concluded that Battle acted in an objectively unreasonable manner under the Fourteenth Amendment in twice tasing Coffman. Therefore, a fortiori, no reasonable jury could conclude that Battle did not commit battery under Georgia state law because "[a] cause of action for . . . battery can be supported by even minimal touching." Ellison v. Burger King Corp., 670 S.E.2d 469, 472 (Ga. Ct. App. 2008). Importantly, though, this does not mean that Battle will necessarily be liable for battery. If this case proceeds to trial and the jury determines that Battle did not act with actual malice or intent to injure, Battle would be entitled to official immunity and therefore could not be held individually liable for battery.

15

leave it to the parties to introduce competent evidence of Battle's state of mind to a jury if and when this case proceeds to trial.

D.

We also write briefly to address Battle's argument that the district court improperly relied on inadmissible hearsay. To the extent that the district court considered Officer Hudson's statements describing Battle's remarks to Coffman in the moments after the tasing incident (as those statements were memorialized in GBI Special Agent Glover's investigative report),[7] Officer Hudson's statements to Special Agent Glover were hearsay. And when considering a motion for summary judgment, "[t]he general rule is that inadmissible hearsay cannot be considered." Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999). But, there is an exception to the general rule: "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" Id. at 1323.

This Court has interpreted this to mean that the hearsay evidence "must be admissible at trial for some purpose," including because it is not hearsay at all or is admissible under an exception to the hearsay rule. Id. More recently, this Court concluded that a district court did not err in considering a hearsay statement at the

---

[7] Among other things, Officer Hudson stated that Battle told Coffman "he would be better off dead" and that "if [Battle] could, he would kill Plaintiff."

summary judgment stage where the hearsay declarant could testify to the relevant facts at trial and had not otherwise offered contradictory statements. Smith v. LePage, 834 F.3d 1285, 1296 n.6 (11th Cir. 2016) (citing Jones v. UPS Ground Freight, 683 F.3d 1283, 1293–94 (11th Cir. 2012)).

We conclude that the district court did not err in considering Officer Hudson's statements describing Battle's troubling remarks to Coffman after the tasing incident. Battle has not argued, and we see no indication in the record, that Officer Hudson is unavailable to testify to these facts at trial. Moreover, Battle has not argued that the record includes evidence that Officer Hudson made any contradictory statements with respect to Battle's remarks that Coffman would be better off dead or that Battle would kill Coffman if he could. Even assuming the district court did err by considering Officer Hudson's statements, however, it would be harmless with respect to any possible error. This is because, even without the evidence of Battle's statements to Coffman after the tasing incident, no reasonable jury could find that Battle acted reasonably under the Fourteenth Amendment given Battle's conduct as shown in the video of the tasing incident taken from inside the suicide cell. See 28 U.S.C. § 2111; Fed. R. Civ. P. 61. And as to the state law official immunity issue, none of Battle's substantial rights were affected because he will be able to question witnesses at trial about his state of mind at the time of the tasing incident. See id.

IV.

For the foregoing reasons, we conclude that the district court did not err in denying Battle's qualified immunity defense and granting Coffman's motion for summary judgment as to his claims that Battle used excessive force in violation of the Fourteenth Amendment when he twice tased Coffman while Coffman was secured to a restraint chair.  Nor do we find any reversible error in the district court's conclusion that genuine factual issues remain as to Battle's mental state for purposes of state law official immunity.  The judgment of the district court is therefore

    AFFIRMED.